**ABBOTT LABORATORIES,**
**Plaintiff–Appellant,**

v.

**GENEVA PHARMACEUTICALS,**
**INC., Defendant–Appellee,**

and

**Novopharm Limited, Defendant–**
**Appellee,**

and

**Invamed, Inc., Defendant–Appellee.**

**Nos. 98–1593 to 98–1595.**

United States Court of Appeals,
Federal Circuit.

July 1, 1999.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Aug. 5, 1999.*

---

* Schall, Circuit Judge did not participate in the vote.

Steven M. Perry, Munger, Tolles & Olson, LLP, of Los Angeles, California, argued for plaintiff-appellant. With him on the brief were Daniel E. Reidy, James A. White, and Tina M. Tabacchi, Jones, Day, Reavis & Pogue, of Chicago, Illinois. Of counsel on the brief was Kenneth D. Greisman, Legal Division, Abbott Laboratories, Abbott Park, Illinois. Of counsel were John Daniel Kiser, Terry S. Coleman and Matthhew D. Peterson, Fox, Bennett & Turner, of Washington, DC.

James Galbraith, Kenyon & Kenyon, of New York, New York, argued for defendant-appellee, Geneva Pharmaceuticals, Inc. With him on the brief were Steven J. Lee and Maria Luisa Palmese.

John E. Rosenquist, Leydig, Voit & Mayer, Ltd., of Chicago, Illinois, argued for defendant-appellee, Novopharm Limited. With him on the brief were Robert F. Green, Pamela J. Ruschau, and Steven H. Sklar.

Daniel A. Monaco, Seidel, Gonda, Lavorgna & Monaco, P.C., of Philadelphia, Pennsylvania, for defendant-appellee, Invamed, Inc. With him on the brief was Camille M. Miller. Of counsel was Arthur H. Seidel.

Before PLAGER, LOURIE, and BRYSON, Circuit Judges.

## DECISION

LOURIE, Circuit Judge.

Abbott Laboratories appeals from the summary judgment of the United States District Court for the Northern District of Illinois holding claim 4 of its United States Patent 5,504,207 invalid under the on-sale provision of 35 U.S.C. § 102(b) (1994). *See Abbott Labs. v. Geneva Pharms., Inc.,* 1998 WL 566884, Nos. 96 C 3331, 96 C 5868, 97 C 7587 (N.D.Ill. Sept. 1, 1998). Because we conclude that the district court properly granted summary judgment of invalidity, we affirm.

## BACKGROUND

Terazosin hydrochloride is a pharmaceutical compound used for the treatment of hypertension and benign prostatic hyperplasia. Abbott Laboratories has marketed it exclusively under the trademark Hytrin since 1987. Abbott's Hytrin tablets contain the dihydrate crystalline form of terazosin hydrochloride. Terazosin hydrochloride also exists in four anhydrous crystalline forms, and claim 4 of the '207 patent specifically claims the Form IV anhydrate. Claim 4 reads as

follows: "4. The anhydrous Form IV crystalline modification of 1-(4-amino-6, 7-dimethoxy-2-quinazolinyl)-4-(2-tetrahydrofuroyl)piperazine hydrochloride characterized by principal peaks in the powder X-ray diffraction pattern at values of...." The particular peaks are not important to the resolution of this case.

Abbott sued Geneva Pharmaceuticals, Inc., Novopharm Limited, and Invamed, Inc. for infringement of the '207 patent after each of them filed an Abbreviated New Drug Application (ANDA) at the United States Food and Drug Administration seeking approval to market a generic version of Hytrin containing the Form IV anhydrate.[1] The cases were consolidated in the United States District Court for the Northern District of Illinois. The defendants each raised the affirmative defense of patent invalidity under the on-sale bar of 35 U.S.C. § 102(b), asserting that Form IV was anticipated because it was sold in the United States more than one year before the '207 patent's filing date, October 18, 1994.

It is undisputed on appeal that a company not party to this law suit, Byron Chemical Company, Inc., made at least three sales of Form IV terazosin hydrochloride anhydrate in the United States more than one year before the October 18, 1994 filing date. Byron sold a five-kilogram lot of anhydrous terazosin hydrochloride during the 1989–90 period and another lot in 1991 to defendant Geneva. Byron sold a third lot to Warner Chilcott Laboratories in 1992. Byron did not manufacture the compound itself; it bought it from two foreign manufacturers—Imhausen-Chemie GMBH in Germany and Yogodawa Pharmaceutical Company in Japan. None of these sales transactions specified which crystalline form of the anhydrous compound was being sold. Thus, at the time of the sales, the parties to the United States transactions did not know the identity of the particular crystalline form with which they were dealing. It was not until after the United States sales transactions were completed that Abbott and Geneva each tested samples from these lots and determined that the Form IV anhydrate crystal was what had been sold.[2]

On defendants' motions for summary judgment,[3] the district court held that the United States sales invalidated claim 4 under the on-sale bar. The court reasoned that Form IV was in the public domain, that buyers had come to rely on it being freely available, and that it was immaterial that the parties were unaware of the nature of that particular crystal form.

Abbott timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

■ Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). We review a district court's grant of summary judgment *de novo*. *See Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir. 1994). The ultimate determination whether an invention was on sale within the meaning of § 102(b) is a question of law which we review *de novo*. *See Manville Sales Corp. v. Paramount Sys., Inc.,* 917

1. It is an act of patent infringement under certain circumstances to file an ANDA seeking approval to commercially manufacture, use, or sell a drug claimed in a patent before the expiration date of such patent. *See* 35 U.S.C. § 271(e)(2)(A) (1994). It is undisputed that such circumstances apply here.

2. Abbott in 1995, and Geneva in 1996, each performed x-ray diffraction analyses on samples from these lots and found that the samples exhibited the pattern of principal peaks at the particular values disclosed in claim 4 that characterize the Form IV anhydrate crystal.

3. Defendants Geneva and Novopharm each filed a motion for summary judgment that claim 4 was invalid under the on-sale bar and joined each other's motions. Defendant Invamed joined both motions.

F.2d 544, 549, 16 USPQ2d 1587, 1591 (Fed. Cir.1990).

■ A patent is invalid under § 102(b) if "the invention was ... on sale in this country, more than one year prior to the date of the application for patent in the United States...." Because Abbott filed the application for the '207 patent on October 18, 1994, the critical date for purposes of the on-sale bar is October 18, 1993. As the parties challenging the validity of a presumptively valid patent, *see* 35 U.S.C. § 282 (1994), the defendants bore the burden of proving the existence of an on-sale bar by clear and convincing evidence. In this case, there are no facts in dispute, leaving only the legal issue whether the § 102(b) on-sale bar invalidates the patent. *See UMC Electronics Co. v. United States*, 816 F.2d 647, 657, 2 USPQ2d 1465, 1472 (Fed.Cir.1987).

■ Abbott argues that claim 4 is not invalid under the on-sale bar because the "invention" was not on sale. For an "invention" to be on sale, Abbott submits, the parties must "conceive," or *know* precisely, the nature of the subject matter with which they are dealing. Since the parties did not know that they were dealing with Form IV, Abbott reasons, they did not "conceive" the subject matter sold and therefore there was no "invention" on sale. The defendants respond that we need only apply the two-part test for the on-sale bar recently set forth by the Supreme Court in *Pfaff v. Wells Electronics, Inc.*,[4] and that, under this test, it is irrelevant that the parties to the sales did not know that they were dealing with Form IV rather than with another anhydrous terazosin hydrochloride crystalline form.

■ We agree with defendants that claim 4 is invalid and that the parties' ignorance that they were dealing with Form IV is irrelevant. The Supreme Court has recently stated a two-part test for determining when the on-sale bar applies. Before the critical date, the invention must both be the subject of a commer-

cial sale or offer for sale and be "ready for patenting." *See Pfaff*, 525 U.S. at ——, 119 S.Ct. at 311–312, 48 USPQ2d at 1646–47 (rejecting the "totality of the circumstances" test for determining whether an invention was on sale before the critical date). An invention may be shown to be "ready for patenting," *inter alia*, by "proof of reduction to practice before the critical date." *Id.*

■ The invention at issue in this case clearly meets the *Pfaff* test. Even though the parties did not know it at the time, it is undisputed that Form IV was the subject matter of at least three commercial sales in the United States before the critical date. It is also clear that the invention was "ready for patenting" because at least two foreign manufacturers had already reduced it to practice. *See Pfaff*, 525 U.S. at —— n. 2, 119 S.Ct. at 307 n. 2, 48 USPQ2d at 1642 n. 2 ("'A composition of matter is reduced to practice when it is completely composed.'") (*citing Corona Cord Tire Co. v. Dovan Chem. Corp.*, 276 U.S. 358, 383, 48 S.Ct. 380, 72 L.Ed. 610 (1928)). Furthermore, the statutory on-sale bar is not subject to exceptions for sales made by third parties either innocently or fraudulently. *See Evans Cooling Sys., Inc. v. General Motors Corp.*, 125 F.3d 1448, 1453–54, 44 USPQ2d 1037, 1040–42 (Fed. Cir.1997). The fact that these sales were not made by Abbott is therefore irrelevant.

■ Abbott insists that there can be no on-sale bar unless conception of the invention has been proved, and that the lack of knowledge of the exact crystalline nature of the material that was sold precludes there having been a conception. We disagree that proof of conception was required. The fact that the claimed material was sold under circumstances in which no question existed that it was useful means that it was reduced to practice. In any event, this is not a priority dispute in which conception is a critical issue. The

4.  525 U.S. 55, ——, 119 S.Ct. 304, 142 L.Ed.2d 261, 48 USPQ2d 1641 (1998).

sale of the material in question obviates any need for inquiry into conception.

Abbott cites cases holding that the accidental, unintended, and unappreciated production of the product or process in question does not constitute anticipation. *See, e.g., Tilghman v. Proctor,* 102 U.S. 707, 711–12, 26 L.Ed. 279 (1881) (an accidental and incidental production of fatty acids by means not understood or appreciated did not anticipate a patented process for separating fatty bodies into fatty acids and glycerin); *Eibel Process Co. v. Minnesota & Ontario Paper Co.,* 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923). Those cases are all off the point because they involved the issue whether the claimed inventions were anticipated by earlier work that produced no useful or appreciated result. In contrast, the material here, having been sold, was decidedly useful and appreciated.

■ Abbott argues that the invention was not on sale because those who sold the claimed product did not know all of its characteristics. We disagree. It is well settled in the law that there is no requirement that a sales offer specifically identify all the characteristics of an invention offered for sale or that the parties recognize the significance of all of these characteristics at the time of the offer. *See Scaltech Inc. v. Retec/Tetra, L.L.C.,* 178 F.3d 1378, 1384 (Fed.Cir.1999). If a product that is offered for sale inherently possesses each of the limitations of the claims, then the invention is on sale, whether or not the parties to the transaction recognize that the product possesses the claimed characteristics. *See id.; J.A. LaPorte, Inc. v. Norfolk Dredging Co.,* 787 F.2d 1577, 1582–83, 229 USPQ 435, 439 (Fed.Cir.1986) ("[T]he question is not whether the sale, even a third party sale, 'discloses' the invention at the time of the sale, but whether the sale relates to a device that *embodies* the invention.") (emphasis in original). In this case, it is undisputed that Form IV falls within the scope of claim 4. The fact that the parties to the sales transactions did not know they were dealing in Form IV at the time of the sales is therefore irrelevant to the question whether it was "on sale" before the critical date.

■ One of the primary purposes of the on-sale bar is to prohibit the withdrawal of inventions that have been placed into the public domain through commercialization. *See, e.g., King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 860, 226 USPQ 402, 406 (Fed.Cir.1985) (the discovery of a new property of an old compound does not make claims to that compound patentable). For these reasons, we affirm the district court's judgment holding claim 4 of the '207 patent invalid.

## CONCLUSION

Because the district court properly granted summary judgment that claim 4 of the '207 patent is invalid under 35 U.S.C. § 102(b), we

*AFFIRM.*